UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 10-23250-CIV-ALTONAGA/Simonton

**FABRICE LAZARRE,**

      Plaintiff,

vs.

**JPMORGAN CHASE BANK, N.A.**, and
**EARLY WARNING SERVICES, LLC**,

      Defendants.
_____/

## ORDER

**THIS CAUSE** came before the Court on Defendant, JPMorgan Chase Bank, N.A.'s ("Chase['s]") Motion to Dismiss Count III of the First Amended Complaint ("Chase's Motion") [ECF No. 43] filed on January 25, 2011, and on Defendant, Early Warning Services, LLC's ("Early Warning['s]") Motion to Dismiss Counts I and II of the First Amended Complaint ("Early Warning's Motion") [ECF No. 42], filed on January 24, 2011. The Court has carefully considered the parties' written submissions, the pleadings, and the applicable law.

### I. BACKGROUND[1]

This case arises from a dispute about a bank account opened at Washington Mutual Bank ("WaMu") in 2007.[2] (*See* Am. Compl. ¶ 13). The WaMu account was opened using Plaintiff, Fabrice Lazarre's identity. (*See id*.). The account was allegedly used for fraudulent activity

---

[1] The allegations in the First Amended Complaint (the "Amended Complaint") [ECF No. 32] are taken as true.

[2] According to both Chase and Early Warning, the WaMu account was used to engage in check fraud. (*See* Am. Compl. ¶ 17).

involving checks, which consisted of

> [t]ransacting or attempting to transact, with a check in a fraudulent manner, including but not limited to the passing or depositing of [a] forged, altered, closed account, stolen, counterfeit check or non-negotiable item; the kiting of checks, drawing against insufficient or uncollected funds, empty envelope ATM deposits, or keying errors.

(*Id*. ¶ 17) (internal quotation marks omitted). Lazarre, however, denies that the WaMu account was his, asserting he was the victim of identity theft. (*See id*. ¶¶ 13, 18–19, 21, 22–23, 25–27, 29, 31). Subsequently, Chase acquired WaMu and reported[3] the fraudulent activity on the WaMu account to Early Warning.[4]  (*See id*. ¶¶ 14, 17). In turn, Early Warning reported the fraudulent activity on the WaMu account to Wachovia Bank ("Wachovia"), where Lazarre had a "longstanding bank account." (*Id*. ¶¶ 15–17). As a result, in October 2009, Lazarre's Wachovia Bank account was placed on "financial hold."[5] (*Id*.).

---

[3] By the time Chase acquired WaMu, it appears that WaMu may have already been reporting the fraudulent activity on the WaMu account to Early Warning.

[4] Early Warning is a "consumer reporting agency" ("CRA") engaged in the business of selling "consumer reports" to third parties. (Am. Compl. ¶¶ 7–9). Under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq*., the term "consumer report" is defined as

> any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for — (A) credit or insurance to be used primarily for personal, family, or household purposes; (B) employment purposes; or (C) any other purpose authorized under section 1681b of this title.

§ 1681a(d)(1) (footnote call number omitted).

[5] It is not clear from the Amended Complaint whether Lazarre had knowledge of the WaMu account prior to October 2009, or if he was first alerted to the WaMu account by the "financial hold" placed on his Wachovia Bank account.

Around October 2009, Lazarre first contacted Chase to dispute its report of the WaMu account and associated fraudulent activity to Early Warning. (*See id*. ¶ 18). Also in October 2009, Lazarre first notified Early Warning it was incorrectly reporting the WaMu account and associated fraudulent activity on its consumer reports. (*See id*. ¶ 19). In both instances, Lazarre informed Chase and Early Warning that the WaMu account did not belong to him. (*See id*. ¶¶ 18–19).

In November 2009, Early Warning contacted Chase regarding Lazarre and the disputed WaMu account. (*See id*. ¶ 20). On November 17, 2009, Early Warning informed Lazarre that its consumer report was correct because Chase had confirmed the WaMu account belonged to him and had been used by him to engage in fraudulent activity. (*See id*. ¶ 21). In response, Lazarre again informed Early Warning that the WaMu account did not belong to him and that its consumer report was incorrect. (*See id*. ¶ 22). Thereafter, Lazarre reiterated this information to Early Warning on multiple occasions.[6] On each occasion, Early Warning responded "its investigation confirmed that the information in [the] consumer report was correct." (*Id*. ¶ 24; *see also id*. ¶ 28).

On May 25, 2010, Lazarre asked Early Warning for an explanation of its reinvestigation procedures. (*See id*. ¶ 29). On June 2, 2010, Early Warning informed Lazarre of its reinvestigation procedures and confirmed that Chase, as the "Furnisher" of information, determined the accuracy of the information reflected in its consumer reports. (*See id*. ¶ 30). Finally, in June 2010, Lazarre's then recently-opened Region's Bank ("Region's") account was closed as a result of an Early

---

[6] According to the Amended Complaint, Lazarre subsequently contacted Early Warning to dispute its consumer report in December 2009, January 2010, March 2010, on May 25, 2010, and in June 2010. In March 2010, on May 25, 2010, and in June 2010, Lazarre also pointed Early Warning to the allegedly incorrect address in the consumer report as proof that the "information in the consumer report did not belong to him." (*Id*. ¶¶ 23, 25, 27, 29, 31).

3

Case No. 10-23250-CIV-ALTONAGA/Simonton

Warning consumer report sent to Region's Bank. (*See id.* ¶ 35).

Lazarre filed suit against Chase and Early Warning on September 9, 2010. (*See* Compl. [ECF No. 1]). After Counts I and II of his first Complaint were dismissed without prejudice on December 8, 2010 (*see* Order 1 [ECF No. 27]), Lazarre filed the Amended Complaint on January 6, 2011. (*See* Am. Compl.).

In the Amended Complaint, Lazarre asserts that both Early Warning and Chase violated various sections of the FCRA. (*See id.* ¶¶ 37–54). Specifically, Lazarre alleges that Early Warning violated FCRA sections 1681e(b) and 1681i(a) (Counts I and II) and that Chase violated FCRA sections 1681s–2(b) (Count III). (*See id.*). Lazarre seeks both actual and statutory damages for these violations. (*See id.* ¶ 1). Chase now seeks to dismiss Count III of the Amended Complaint for lack of subject-matter jurisdiction and for failure to state a claim upon which relief can be granted pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (*See* Chase's Mot. ¶¶ 2–16). Early Warning seeks to dismiss Counts I and II of the Amended Complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). (*See* Early Warning's Mot. ¶¶ 10–20).

## II. LEGAL STANDARD

> When a district court has pending before it both a [Rule] 12(b)(1) motion and a [Rule] 12(b)(6) motion, the generally preferable approach, if the [Rule] 12(b)(1) motion essentially challenges the existence of a federal cause of action, is for the court to [first] find jurisdiction and then decide the [Rule] 12(b)(6) motion.

*Gomez v. BankUnited*, No. 10-21707-CIV, 2011 WL 114066, at *2 (S.D. Fla. Jan. 13, 2011) (quoting *Jones v. Georgia*, 725 F.2d 622, 623 (11th Cir. 1984)).

4

Case No. 10-23250-CIV-ALTONAGA/Simonton

### A. Rule 12(b)(1) Standard

"Federal courts are courts of limited jurisdiction." *Ishler v. Internal Revenue*, 237 F. App'x 394, 395 (11th Cir. 2007). A court must dismiss a complaint, or portions thereof, if it determines at any time that it lacks subject-matter jurisdiction over a claim being asserted. *See* FED. R. CIV. P. 12(h)(3). Challenges to subject-matter jurisdiction can be either factual or facial. *See Ibarra v. Swacina*, No. 09-22354-CIV, 2009 WL 4506544, at *4 (S.D. Fla. Dec. 3, 2009).

> A facial attack on the complaint requires the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in [the plaintiff's] complaint are taken as true for the purposes of the [Rule 12(b)(1)] motion. . . . [A] factual attack on a complaint challenges the existence of subject matter jurisdiction using material extrinsic [to] the pleadings, such as affidavits or testimony.

*Id.* (internal citations and quotation marks omitted). The plaintiff bears the burden of establishing the existence of federal subject-matter jurisdiction. *See Sweet Pea Marine, Ltd. v. APJ Marine, Inc.*, 411 F.3d 1242, 1247 (11th Cir. 2005); *see also Ishler*, 237 F. App'x at 395 ("Ultimately, the plaintiff bears the burden of establishing subject matter jurisdiction.").

### B. Rule 12(b)(6) Standard

"'To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A complaint must state factual allegations that are not merely consistent with the material elements of a claim, but rather, that plausibly suggest the elements." *Allmond v. Bank of Am.*, No. 3:07-cv-186-J-33JRK, 2008 WL 2445652, at *3 (M.D. Fla. June 16, 2008) (citing *Twombly*, 550 U.S. at 557). Although this pleading standard "does not require 'detailed factual allegations,' . . . it demands more than an

5

Case No. 10-23250-CIV-ALTONAGA/Simonton

unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal,* 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 555). Pleadings must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. When reviewing a motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff and take the factual allegations therein as true. *See Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997).

### III.  ANALYSIS

**A.  Chase**

**i.  The Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA")**

The FIRREA, Pub. L. No. 101-73, 103 Stat. 183 (1989), as codified in Title 12, United States Code, section 1821, sets forth the procedures for bringing claims against failed lending entities.[7] *See* 12 U.S.C. §§ 1821(d)(3)–(13); *see also Stamm v. Paul*, 121 F.3d 635, 639 (11th Cir. 1997). Specifically, section 1821 provides for the appointment of the Federal Deposit Insurance Corporation ("FDIC") as a receiver for failed lending entities and requires that claims against such entities first be submitted to the FDIC for administrative review and adjudication prior to judicial review in a U.S. District Court. *See* §§ 1821(a)(4), (c), (d)(3)–(13); *see also Stamm*, 121 F.3d at 639 ("In enacting FIRREA, Congress anticipated that, as a receiver for failed lending entities, the [FDIC] would face numerous claims . . . . Accordingly, it sought to reduce the volume of formal litigation . . . by providing for administrative review of such claims by the [FDIC] before judicial proceedings could commence."). In pertinent part, section 1821(d) states:

---

[7] For present purposes, WaMu is considered a failed lending entity.

6

Case No. 10-23250-CIV-ALTONAGA/Simonton

> [N]o court shall have jurisdiction over . . .
>
> (ii) *any claim relating to any act or omission of such [failed lending] institution* or the [FDIC] as receiver.

12 U.S.C. § 1821(d)(13)(D) (emphasis added). Courts have construed section 1821(d)(13)(D) as an administrative exhaustion requirement. *See Stamm*, 121 F.3d at 639 (referring to section 1821(d)(13)(D) as a "statutory exhaustion requirement"); *see also Gomez*, 2011 WL 114066, at *2 ("Under the terms of the FIRREA, . . . a district court can review . . . a claim . . . if the claimant has exhausted his administrative remedies.") (footnote call number omitted). Thus, only after exhaustion of the administrative review procedures set forth in section 1821(d) may a party seek adjudication of a claim in a U.S. District Court.[8] *See* §§ 1821(d)(3)–(13)(D); *see also Stamm*, 121 F.3d at 639; *Gomez*, 2011 WL 114066, at *2.

The Eleventh Circuit has held that this "'statutory exhaustion requirement [ ] generally applies to post-receivership as well as pre-receivership claims.'" *Stamm*, 121 F.3d at 639 (quoting *Damiano v. Federal Deposit Ins. Corp.*, 104 F.3d 328, 333 (11th Cir. 1997)) (emphasis omitted). "Post-receivership claims encompass at least two rough classes: (1) claims related to conduct by the failed institution that the aggrieved party neglects to assert until after the [FDIC] assumes control over the lending entity; and (2) claims based on the [FDIC's] actions as receiver." *Id*. (emphasis omitted). Moreover, an entity that purchases a failed lending institution's assets from the FDIC acquires the administrative review protections afforded by section 1821(d). *See Am. First Fed., Inc. v. Lake Forest Park, Inc.*, 198 F.3d 1259, 1263 n.3 (11th Cir. 1999).

---

[8] A party exhausts the section 1821(d)(13)(D) administrative review procedures by first submitting the claims to the appointed receiver.

Case No. 10-23250-CIV-ALTONAGA/Simonton

### ii. Pursuant to Section 1821(d), the Court Lacks Subject-Matter Jurisdiction Over Lazarre's Claims Against Chase

Chase asserts that the claims in Count III of the Amended Complaint arise from WaMu's initial act of opening the WaMu account and thus are subject to the FIRREA administrative exhaustion requirement. (*See* Chase's Mot. ¶¶ 1–2, 10) Because Lazarre has not submitted these claims to the FDIC, Chase argues the Court lacks subject-matter jurisdiction to adjudicate them. (*See id*.). In his Response to Chase's Motion (the "Response") [ECF No. 49], Lazarre concedes he has not complied with the FIRREA administrative exhaustion requirements. (*See* Resp. 2). Instead, Lazarre maintains: (1) his claims pertain to Chase's conduct only and are unrelated to any act by WaMu, and (2) the administrative exhaustion requirement of the FIRREA only bars from judicial review those claims asserted against a successor lending institution that are predicated on the wrongful conduct of the failed lending institution. (*See* Resp. 2, 5, 7–8). In so framing his argument, Lazarre ignores the true nature of his claims as pleaded against Chase.

Lazarre alleges Chase violated provisions of the FCRA by consistently concluding the WaMu account was not fraudulent. (*See* Am. Compl. ¶ 50(iii)) ("CHASE violated . . . § 1681s-2(b) by failing to correctly report the results to the [CRAs] of what an accurate investigation of Lazarre would have revealed . . . ."); (*see also* Am. Compl. ¶¶ 50(viii), (x), (xi)). Lazarre also alleges Chase did not "reasonably investigate" his dispute of the WaMu account or "correctly report" the results of the investigations it did conduct. (Am. Compl. ¶¶ 50(i), (iii)). Lazarre argues his claims arise from these procedural failures by Chase, not from any conduct by WaMu. However, this characterization of Count III ignores that an adjudication on the merits of Lazarre's claims against

8

Case No. 10-23250-CIV-ALTONAGA/Simonton

Chase requires a determination of the legitimacy of the WaMu account.[9]

While Lazarre asserts that his claims are solely "predicated upon Chase's own wrongful conduct" (Resp. 2),[10] Lazarre cannot escape the fact that Chase's alleged failures to reasonably investigate Lazarre's dispute of the WaMu account and correctly report the results of the investigations it did conduct are related to an initial act of WaMu — either WaMu's opening of the WaMu account[11] or WaMu's reporting of the WaMu account and associated fraudulent activity to Early Warning.[12]  (*See* Am. Compl. ¶¶ 50(i), (iii)).  The plain language of section 1821(d)(13)(D)

---

[9] Under Lazarre's characterization of his claims against Chase, it is possible that the WaMu account actually belonged to Lazarre, but that Chase still violated provisions of the FCRA by failing to conduct an adequate investigation.  However, Lazarre does not allege any specific deficiencies in Chase's investigation.  Instead, he alleges that Chase's investigation was inadequate *because* it concluded that the WaMu account belonged to Lazarre.  Thus, Lazarre's claims as pleaded are not concerned with Chase's conduct, but rather with the legitimacy of the WaMu account.

[10] *See also* Am. Compl. ¶ 32 ("At all relevant times, CHASE reported the incorrect information about Lazarre's fraudulent account to EARLY WARNING.").

[11] The Amended Complaint states that "[s]omeone opened a[n] . . . account at [WaMu] sometime in 2007 . . . and purportedly engaged in a fraudulent transaction with WaMu.  Subsequently, C[hase] acquired [WaMu]."  (Am. Compl. ¶¶ 13–14).

[12] The Early Warning Consumer Report attached to Chase's Reply in Further Support of its Motion ("the Reply") [ECF No. 59] suggests that WaMu, not Chase, reported the WaMu account and associated fraudulent activity to Early Warning.  (*See* Chase's Ex. A [ECF No. 59-1]; *see also* Chase's Ex. 1 [ECF No. 60-1]).  Although submitted by Chase, the Court may consider the Early Warning Consumer Report because Lazarre references it in his Amended Complaint (*see* Am. Compl. ¶ 17), and it is central to his claim.  *See Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) ("[W]here the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the Court may consider the documents part of the pleadings for purposes of [ ] dismissal, and the defendant's attaching such documents to the motion to dismiss will not require conversion of the motion into a motion for summary judgment."); *see also Venture Assoc. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993) ("Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [his] claim.").

As evidenced by the "reported on" date contained in the consumer report, the WaMu account and associated fraudulent activity were reported to Early Warning on December 17, 2007.  (*See* Chase's Ex. A; *see also* Chase's Ex. 1).  According to the FDIC website, *see* Failed Financial Institution Contact, http://www2.fdic.gov/drrip/cs/Detail.asp, Chase did not acquire WaMu until September 25, 2008.  (Website

Case No. 10-23250-CIV-ALTONAGA/Simonton

bars judicial review of "*any* claim relating to *any act* . . . of [a failed lending institution] . . . ." (emphasis added).[13] Because Lazarre's claims against Chase relate to an act of WaMu, they are subject to the administrative exhaustion requirement of section 1821(d).

Further, both the FDIC and the Resolution Trust Corporation ("RTC"), in their capacities as receivers for failed lending institutions, have broadly construed the plain language of section 1821(d) to effectuate the Congressional intent that "[they] and not the courts serve as the first line of review under FIRREA." *Stamm*, 121 F.3d at 641 (noting that the RTC's approach subjects an expanded range of claims to the FIRREA's administrative exhaustion requirement); *see also Gomez*, 2011 WL 114066, at *4 (explaining that the FDIC has interpreted section 1821(d)(5)(C) to allow administrative review of claims that arise after the claim-filing period). The Eleventh Circuit has found these broad and inclusive constructions of section 1821(d) to be reasonable interpretations of an otherwise ambiguous statute, and thus worthy of deference under *Chevron U.S.A., Inc. v. Natural*

---

last visited Mar. 29, 2011). The Court may take judicial notice of this fact, since it is "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." FED. R. EVID. 201. Thus, contrary to Lazarre's allegations, it appears WaMu, not Chase, initially furnished the information that Early Warning subsequently reported to Wachovia and Region's. (*Cf.* Am. Compl. ¶¶ 17, 32).

[13] Lazarre suggests "that the proper analysis [for whether the FIRREA administrative exhaustion requirement applies] requires a determination of who caused the complained-of harm." (Resp. 7). But the FIRREA does not require a determination that the failed lending institution *caused* the complained-of harm to bring a claim within the administrative exhaustion requirement. Rather, the plain language of section 1821(d)(13)(D) requires that the complained-of harm "relat[e] to any act . . . of such [failed lending] institution . . . ." § 1821(d)(13)(D)(ii). Further, to accept Lazarre's suggestion, the Court would have to ignore the Eleventh Circuit's reliance on the plain language of section 1821(d) in adjudicating cases like this one. *See Lake Forest Park*, 198 F.3d at 1263 (noting that all categories of claims derived from the plain language of section 1821(d)(13)(D) are subject to the administrative exhaustion requirement of the FIRREA); *see also Stamm*, 121 F.3d at 642 (deferring to the Resolution Trust Corporation's construction of section 1821(d) so as to avoid the need for the court "to look beyond the plain language of [1821(d)'s] jurisdictional bar").

Case No. 10-23250-CIV-ALTONAGA/Simonton

*Res. Def. Council, Inc.*, 467 U.S. 837, 842–843 (1984).[14] *See Stamm*, 121 F.3d at 641 ("[W]e cannot say that [the RTC's broad interpretation of section 1821(d)(5)(C)(ii)] [fails to] represent a permissible reading of an ambiguous provision . . . under the deferential standard required by [*Chevron*] . . . .") (internal quotation marks omitted); *see also Gomez*, 2011 WL 114066, at *4 ("[T]he Eleventh Circuit has accepted the [FDIC's] [broad] interpretation of [section 1821(d)(5)(C)] to allow administrative review of those claims that do not come into existence until after the [claims] bar date.").

Permitting a plaintiff to avoid the FDIC's administrative review process by recharacterizing his claims would remove the teeth from the exhaustion requirement. The Court lacks subject-matter jurisdiction over Lazarre's claims against Chase because Lazarre did not first present them to the FDIC for administrative review and adjudication.[15]

### iii. Chase's Rule 12(b)(6) Motion

Because the Court lacks subject-matter jurisdiction over Lazarre's claims against Chase, the

---

[14] In cases such as this one, the Eleventh Circuit has also afforded the full extent of the FIRREA's protections to successor lending institutions. *See Lake Forest Park*, 198 F.3d at 1263 n.3. The Court acknowledges that a line must exist beyond which FIRREA's protections do not extend to a successor lending institution. However, under the present allegations, this case does not approach that line.

[15] Lazarre may not be left without a remedy. The Court's decision does not prevent Lazarre from now submitting his claims against Chase to the FDIC for administrative review consistent with the FIRREA. There are two scenarios under which this could happen, both involving the claims deadline exception set forth in section 1821(d)(5)(C)(ii)(I). First, in the Amended Complaint, Lazarre alleges that his purported address in the Early Warning consumer report was incorrect. (*See* Am. Compl. ¶¶ 27, 29). Thus, he may not have received notice of the FDIC's appointment as receiver of WaMu before the 90-day claims deadline, *see* § 1821(d)(3)(B)(i), and his claims may not be time-barred pursuant to section 1821(d)(5)(C)(ii)(I). Second, "the Eleventh Circuit has accepted the [FDIC's] interpretation of [section 1821(d)(5)(C)(ii)(I)] to allow administrative review of those claims that do not come into existence until after the [claims] bar date." *Gomez*, 2011 WL 114066 at *4. If Lazarre's claims against Chase did not arise until after the 90-day claim-filing period, they may not be time-barred.

Case No. 10-23250-CIV-ALTONAGA/Simonton

Court does not reach the merits of Chase's Rule 12(b)(6) motion.

### B. Early Warning

#### i. The FCRA

"The FCRA is intended 'to prevent consumers from being unjustly damaged because of inaccurate or arbitrary information in a credit report.'" *Allmond v. Bank of Am.*, No. 3:07-cv-186-J-33JRK, 2008 WL 2445652, at *2 (M.D. Fla. June 16, 2008) (quoting *Equifax v. Fed. Trade Comm'n*, 678 F.2d 1047, 1048 (11th Cir. 1982)). Accordingly, the FCRA provides a private right of action against CRAs such as Early Warning. *See id*. However, "[t]he [FCRA] does not make [CRAs] strictly liable for all inaccuracies in the reports they prepare." *Bermudez v. Equifax Info. Servs., LLC*, No. 6:07-cv-1492-Orl-31GJK, 2008 WL 5235161, at *2 (M.D. Fla. Dec. 15, 2008) (citing *Cahlin v. Gen. Motors Acceptance Corp.*, 936 F.2d 1151, 1156 (11th Cir. 1991)).

Pertinent in the present case are FCRA sections 1681e(b) and 1681i(a). With respect to the accuracy of the information contained in a consumer report, section 1681e(b) provides that "[w]henever a [CRA] prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b). When the accuracy of information contained in a consumer report is disputed by a consumer and the consumer notifies the CRA of such dispute, section 1681i(a) provides that the CRA

> shall . . . conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the [consumer report] in accordance with paragraph (5), before the end of the 30-day period beginning on the date on which the [CRA] receives the notice of the dispute from the consumer . . . .

Case No. 10-23250-CIV-ALTONAGA/Simonton

15 U.S.C. § 1681i(a)(1)(A).

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Early Warning asserts Counts II and III of the Amended Complaint, based on the FCRA, fail to state claims upon which relief can be granted and should therefore be dismissed. (*See* Early Warning's Mot. ¶¶ 2–3, 11–12, 15–16, 19–20, 22, 24).

### ii. Lazarre Fails to State a Claim Against Early Warning

Lazarre does not allege sufficient facts to state a claim against Early Warning for violation of FCRA section 1681e(b). To state a claim for a violation of FCRA section 1681e(b) a plaintiff must allege: (1) the CRA published an inaccurate consumer report to a third party; (2) in publishing its consumer report, the CRA failed to follow reasonable procedures to ensure the maximum possible accuracy of the consumer report; and (3) the plaintiff suffered actual damages as a result of the CRA's failure to follow reasonable procedures. *See Bermudez*, 2008 WL 5235161, at *2 (citing *Enwonwu v. Trans Union, LLC*, 164 F. App'x 914 (11th Cir. 2006)). Lazarre does not allege sufficient facts to plausibly suggest that Early Warning failed to follow reasonable procedures to ensure the maximum possible accuracy of the consumer report. Specifically, Lazarre fails to allege any facts, beyond the mere "formulaic recitation of the elements of a cause of action," *see Twombly*, 550 U.S. at 555, to demonstrate how, in preparing or publishing its consumer report, Early Warning failed to establish or follow reasonable procedures to ensure the accuracy of the consumer report. (*See* Am. Compl. ¶¶ 33–34, 38–39).

While Lazarre alleges that Early Warning relied on information furnished to it by Chase in publishing the consumer report (*see* Am. Compl. ¶ 17), he does not allege or explain why this

13

Case No. 10-23250-CIV-ALTONAGA/Simonton

reliance was unreasonable. *See Allmond*, 2008 WL 2445652, at *3 (holding that plaintiff did not state a claim for relief under section 1681e(b) where he failed to allege that, in preparing an inaccurate credit report, Early Warning's reliance on information supplied by Bank of America was unreasonable). "[F]ailure to follow reasonable procedures is a material element necessary for recovery under [section] 1681e(b)." *Id*. at *2. Because Lazarre does not allege sufficient facts to establish that Early Warning did not follow reasonable investigation procedures, Count I of the Amended Complaint fails to state a claim against Early Warning for a violation of FCRA section 1681e(b). Accordingly, Count I must be dismissed.

Lazarre also fails to allege sufficient facts to maintain his claim against Early Warning under FCRA section 1681i(a). To state a claim for a violation of FCRA section 1681i(a) a plaintiff must allege: "(1) the [consumer report in dispute] contains inaccurate or incomplete information; (2) the [plaintiff] notified the [CRA] of the alleged inaccuracy; (3) the dispute is not frivolous or irrelevant; (4) the [CRA] failed to respond or conduct a reasonable reinvestigation of the disputed items; [and] (5) the failure to reinvestigate caused the [plaintiff] to suffer out-of-pocket losses or intangible damages such as humiliation or mental distress." *Bermudez,* 2008 WL 5235161, at *4. Thus, assuming a dispute is not frivolous and damages are alleged, "to state a claim for violation of [FCRA] section [1681i(a)], the consumer must allege that the [CRA] had notice of the disputed information and failed to [reasonably] reinvestigate." *Allmond*, 2008 WL 2445652, at *3.

While Lazarre alleges Early Warning's consumer report was inaccurate and he notified Early Warning of the alleged inaccuracy, he does not allege sufficient facts to plausibly suggest Early Warning failed to respond or conduct a reasonable reinvestigation of the disputed consumer report.

14

Case No. 10-23250-CIV-ALTONAGA/Simonton

First, Lazarre's allegations as to this element once again amount to little more than a "formulaic recitation of the elements of a cause of action." *Twombl*y, 550 U.S. at 555; (*see also* Am. Compl. ¶ 44(iv)) ("EARLY WARNING violated . . . § 1681i(a) by failing to conduct a reasonable reinvestigation concerning the inaccurate information after receiving notice of the dispute from LAZARRE . . . ."). Second, the Amended Complaint alleges Early Warning conducted several reinvestigations of the disputed consumer report in response to Lazarre's allegations. (*See id*. ¶¶ 20–21, 24, 28, 30). Lazarre does not allege sufficient facts to plausibly suggest these reinvestigations were unreasonable. Because Lazarre does not allege sufficient facts to state a claim against Early Warning for violation of FCRA section 1681i(a), Count II of the Amended Complaint must also be dismissed.[16]

## IV. CONCLUSION

Based on the foregoing, it is

**ORDERED AND ADJUDGED** as follows:

1. Chase's Motion to Dismiss Count III of the First Amended Complaint **[ECF No. 43]** is **GRANTED**.

2. Early Warning's Motion to Dismiss Counts I and II of the First Amended Complaint **[ECF**

---

[16] In his Response to Early Warning's Motion, Lazarre asserts that, if necessary, the "facts sufficient to show the alleged violations of the FCRA . . . can be fleshed out in discovery." (Resp. 3). However, "[t]he [C]ourt is of the firm belief that facts necessary to state a cause of action must be stated in the complaint and that a plaintiff should not be allowed to file a suit and then conduct discovery to see if he, in fact, has a case." *LaMar Printing, Inc. v. Minuteman Press Int'l, Inc*., No. C81-05A, 1981 WL 2080, at *3 (N.D. Ga. May 14, 1981). "Discovery . . . is intended to narrow the scope of the issues and to prevent surprise at trial; it is not intended to allow a plaintiff to go on a fishing expedition to see if the speculative complaint that he has filed has any basis in fact. *Id*. Moreover, "[j]udges are trusted to prevent 'fishing expeditions' . . . for evidence of some unknown wrongdoing." *Cuomo v. Clearing House Ass'n, L.L.C.*, 129 S. Ct. 2710, 2719 (2009).

Case No. 10-23250-CIV-ALTONAGA/Simonton

**No. 42]** is **GRANTED**.

3. Plaintiff shall have until April 22, 2011 to file an amended complaint. The failure to do so will result in an order of dismissal.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 14th day of April, 2011.

_____
**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record