UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 10-23250-CIV-ALTONAGA/Simonton

**FABRICE LAZARRE**,

      Plaintiff,

vs.

**JPMORGAN CHASE BANK, N.A.**, and
**EARLY WARNING SERVICES, LLC**,

      Defendants.
_____/

## ORDER

**THIS CAUSE** came before the Court on Defendant, Early Warning Services, LLC's ("Early Warning['s]") Motion to Dismiss the Second Amended Complaint (the "Motion") [ECF No. 69], filed on May 19, 2011. The Court has carefully considered the parties' written submissions, the pleadings, and applicable law.

### I. BACKGROUND[1]

This case arises from a dispute about a bank account opened at Washington Mutual Bank ("WaMu") in 2007. (*See* 2d Am. Compl. ¶ 10). The WaMu account was opened using Plaintiff, Fabrice Lazarre's identity. (*See id*.). The account was allegedly used for fraudulent activity involving checks, which consisted of

> [t]ransacting or attempting to transact, with a check in a fraudulent manner, including but not limited to the passing or depositing of [a] forged, altered, closed account, stolen, counterfeit check or non-negotiable item; the kiting of checks, drawing against insufficient or uncollected funds, empty envelope ATM deposits, or keying errors.

---

[1] The allegations in the Second Amended Complaint [ECF No. 63] are taken as true.

(*Id.* ¶ 14) (internal quotation marks omitted). Lazarre, however, denies the WaMu account was his, asserting he was the victim of identity theft. (*See id.* ¶¶ 10, 15, 18–19, 22, 26–27, 29). Early Warning reported the fraudulent activity on the WaMu account to Wachovia Bank ("Wachovia"), where Lazarre had a "longstanding bank account." (*Id.* ¶¶ 12, 14). As a result, in October 2009, Lazarre's Wachovia Bank account was placed on "financial hold." (*Id.* ¶ 13).

That month, Lazarre first notified Early Warning it was incorrectly reporting the WaMu account and associated fraudulent activity on its consumer reports. (*See id.* ¶ 15). In that communication, Lazarre informed Early Warning that the WaMu account did not belong to him. (*See id.*).

In November 2009, Early Warning contacted JPMorgan Chase Bank, N.A. ("Chase"), which had acquired WaMu, regarding Lazarre and the disputed WaMu account. (*See id.* ¶ 16–17). Later in November, Early Warning informed Lazarre that its consumer report was correct because Chase had confirmed the WaMu account belonged to him and had been used by him to engage in fraudulent activity. (*See id.* ¶ 17). In response, Lazarre again informed Early Warning that the WaMu account did not belong to him and that its consumer report was incorrect. (*See id.* ¶ 18). Thereafter, Lazarre reiterated this information to Early Warning on multiple occasions.[2] On three of these occasions, Early Warning responded:

> We have completed a reinvestigation of your file. The results of our investigation confirm that some of the information you provided to Wachovia was reported to us

---

[2] According to the Second Amended Complaint, Lazarre subsequently contacted Early Warning to dispute its consumer report in December 2009, January 2010, February 2010, March 2010, May 2010, and June 2010. (*See* 2d Am. Compl. ¶¶ 19, 21, 23, 25, 26, 29).

by another financial institution(s) as inappropriately used, and that the information reported to us resulted in a financial loss to, or other potential loss with respect to, the reporting financial institution(s).

(*Id.* ¶¶ 21, 25, 31)

On May 25, 2010, Lazarre again disputed the allegedly fraudulent entry in his file (*see id.* ¶ 26), and on June 2, 2010, Early Warning responded with the following:

As a consumer reporting agency [("CRA")], Early Warning Services is obligated to involve a Furnisher of information contained in a file in the reinvestigation of that information. Early Warning Services gathers all pertinent information regarding the request for reinvestigation of the disputed record and forwards such information along with the request to the Furnisher. Early Warning Services tracks the reinvestigation period to ensure that the Furnisher completes the reinvestigation within the time frame allowed by the Fair Credit Reporting Act.

The Furnisher's reinvestigation includes a complete review of the facts regarding the contributed data. Based upon its reinvestigation, the Furnisher determines whether the information is accurate, inaccurate or incomplete. Upon completion of the reinvestigation, a notice of the outcome is sent to the consumer and Early Warning Services.

(*Id.* ¶ 28 (quoting June 2, 2010 communication from Early Warning)).

In June 2010, Lazarre's then recently opened Region's Bank ("Region's") account was closed as a result of an Early Warning consumer report sent to Region's. (*See id.* ¶ 34).

In the Second Amended Complaint, Lazarre asserts Early Warning violated two provisions of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq*. (*See id*. ¶¶ 41–52). Specifically, Lazarre alleges Early Warning violated 15 U.S.C. §§ 1681e(b) and 1681i(a) (Counts I and II). (*See id*.). Pursuant to Federal Rule of Civil Procedure 12(b)(6), Early Warning seeks to dismiss both Counts of the Second Amended Complaint for failure to state a claim upon which relief may be granted. (*See* Mot. ¶¶ 5–10).

Case No. 10-23250-CIV-ALTONAGA/Simonton

## II.  LEGAL STANDARD

"'To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A complaint must state factual allegations that are not merely consistent with the material elements of a claim, but rather, that plausibly suggest the elements." *Allmond v. Bank of Am.*, No. 3:07-cv-186-J-33JRK, 2008 WL 2445652, at *3 (M.D. Fla. June 16, 2008) (citing *Twombly*, 550 U.S. at 557). Although this pleading standard "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal,* 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 555).  Pleadings must contain "more than labels and conclusions, and a formulaic  recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. When reviewing a motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff and take the factual allegations therein as true.  *See Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997).

## III.  ANALYSIS

"The FCRA is intended 'to prevent consumers from being unjustly damaged because of inaccurate or arbitrary information in a credit report.'" *Allmond v. Bank of Am.*, No. 3:07-cv-186-J-33JRK, 2008 WL 2445652, at *2 (M.D. Fla. June 16, 2008) (quoting *Equifax v. Fed. Trade Comm'n*, 678 F.2d 1047, 1048 (11th Cir. 1982)).  Accordingly, the FCRA provides a private right of action against CRAs such as Early Warning.  *See id*.  However, "[t]he [FCRA] does not make [CRAs] strictly liable for all inaccuracies in the reports they prepare." *Bermudez v. Equifax Info. Servs*.,

Case No. 10-23250-CIV-ALTONAGA/Simonton

*LLC*, No. 6:07-cv-1492-Orl-31GJK, 2008 WL 5235161, at *2 (M.D. Fla. Dec. 15, 2008) (citing *Cahlin v. Gen. Motors Acceptance Corp.*, 936 F.2d 1151, 1156 (11th Cir. 1991)).

Pertinent in the present case are FCRA sections 1681e(b) and 1681i(a). With respect to the accuracy of the information contained in a consumer report,[3] section 1681e(b) provides that "[w]henever a [CRA] prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b). When the accuracy of information contained in a consumer's file is disputed by the consumer and the consumer notifies the CRA of such dispute, section 1681i(a) provides that the CRA

> shall . . . conduct a *reasonable* reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file in accordance with paragraph (5), before the end of the 30-day period beginning on the date on which the [CRA] receives the notice of the dispute from the consumer . . . .

*Id.* § 1681i(a)(1)(A) (emphasis added).

Early Warning asserts Counts I and II of the Second Amended Complaint, based on the FCRA, fail to state claims upon which relief can be granted and should therefore be dismissed. (*See*

---

[3] A "consumer report" is defined as:

> any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purposes of serving as a factor in establishing the consumer's eligibility for — . . . any other purpose authorized [including a legitimate business need for the information].

15 U.S.C. § 1681a(d)(1) (omitting exceptions which do not appear to be relevant); *see also id.* § 1681b(a)(3)(F).

Case No. 10-23250-CIV-ALTONAGA/Simonton

Mot. ¶¶ 12–25). Lazarre contends "because [Early Warning] delegated to the furnisher of the disputed information the statutory duty to investigate Lazarre's documented disputes, [Early Warning] failed to conduct an independent investigation, thereby violating both Section 1[6]81e(b) and Section 1681[i](a)." (Resp. 2 [ECF No. 74]). In order to make the logical relationship between the two provisions clear, the Court first addresses the duty to reinvestigate under 1681i(a), then turns to the duty to maintain reasonable procedures to assure maximum possible accuracy under section 1681e(b).

### A. Section 1681i(a)

To state a claim for a violation of FCRA section 1681i(a) a plaintiff must allege: "(1) the consumer's credit report contains inaccurate or incomplete information; (2) the [plaintiff] notified the [CRA] of the alleged inaccuracy; (3) the dispute is not frivolous or irrelevant; (4) the [CRA] failed to respond or conduct a reasonable reinvestigation of the disputed items; [and] (5) the failure to reinvestigate caused the [plaintiff] to suffer out-of-pocket losses or intangible damages such as humiliation or mental distress." *Bermudez,* 2008 WL 5235161, at *4. Thus, assuming a dispute is not frivolous and damages are alleged, "to state a claim for violation of [FCRA] section [1681i(a)], the consumer must allege that the [CRA] had notice of the disputed information and failed to [reasonably] reinvestigate." *Allmond*, 2008 WL 2445652, at *3.

In his Second Amended Complaint, Lazarre has added sufficient factual detail to support a plausible claim that Early Warning failed to conduct a reasonable reinvestigation of the disputed consumer report under section 1681i(a). In particular, Lazarre provides the content of a message from Early Warning in June 2010, where Early Warning explains its reinvestigation procedure:

Case No. 10-23250-CIV-ALTONAGA/Simonton

> As a consumer reporting agency, Early Warning Services is obligated to involve a Furnisher of information contained in a file in the reinvestigation of that information. Early Warning Services gathers all pertinent information regarding the request for reinvestigation of the disputed record and forwards such information along with the request to the Furnisher. Early Warning Services tracks the reinvestigation period to ensure that the Furnisher completes the reinvestigation within the time frame allowed by the Fair Credit Reporting Act.
>
> The Furnisher's reinvestigation includes a complete review of the facts regarding the contributed data. Based upon its reinvestigation, the Furnisher determines whether the information is accurate, inaccurate or incomplete. Upon completion of the reinvestigation, a notice of the outcome is sent to the consumer and Early Warning Services.

(2d Am. Compl. ¶ 28 (quoting June 2, 2010 communication from Early Warning)).

Lazarre also provides the responses he received from Early Warning after each reinvestigation. The responses, which always said the same thing, read:

> We have completed a reinvestigation of your file. The results of our investigation confirm that some of the information you provided to Wachovia was reported to us by another financial institution(s) as inappropriately used, and that the information reported to us resulted in a financial loss to, or other potential loss with respect to, the reporting financial institution(s).

(*Id*. ¶¶ 21, 25, 31). Lazarre complains this message is "nonsensical[]." (*Id*.). While the Court does not agree the message is nonsensical, it is, as pleaded, vague and unclear.

The message appears only to suggest that Early Warning checked to see if the information used to open the Wachovia account was the same as that used to open (presumably) the disputed WaMu account. Early Warning appears to have performed this consistency check and determined that *some* of the information was the same. However in his communication with Early Warning, Lazarre had already explained why some of the data was the same: "although [Lazarre's] driver license and social security numbers were accurate, his home address and telephone numbers were

Case No. 10-23250-CIV-ALTONAGA/Simonton

wrong, indicating that his identity had been stolen." (*Id*. ¶ 19).

The Court must assume Lazarre's factual allegations are true — including that he was the victim of identity theft. Thus, if someone other than Lazarre opened and fraudulently used the disputed WaMu account, the messages he received from Early Warning explaining its reinvestigation process would have been extraordinarily frustrating to him as an innocent victim of identity theft. Early Warning's messages suggest it relied entirely on Chase's reinvestigation of the WaMu account or perhaps conducted only a very minimal reinvestigation of its own. The messages do not show Early Warning made any effort to verify that Lazarre himself — as opposed to an identity thief — opened and used the WaMu account. The allegations that Early Warning sent Lazarre the same canned response at least three times, even as Lazarre provided additional information suggesting the WaMu account was not his, indicate that Early Warning was not taking his complaints seriously. To the extent these messages from Early Warning provide a complete account of Early Warning's reinvestigation procedure, a jury could conclude that Early Warning's reinvestigation procedure was unreasonable. *See, e.g., Swoager v. Credit Bureau*, 608 F. Supp. 972, 975–76 (M.D. Fla. 1985) (holding that merely contacting creditor about a disputed entry does not amount to a reasonable investigation).

**B. Section 1681e(b)**

To state a claim for a violation of FCRA section 1681e(b) a plaintiff must allege: (1) the CRA published an inaccurate consumer report to a third party; (2) in publishing its consumer report, the CRA failed to follow reasonable procedures to assure the maximum possible accuracy of the consumer report; and (3) the plaintiff suffered actual damages as a result of the CRA's failure to

Case No. 10-23250-CIV-ALTONAGA/Simonton

follow reasonable procedures. *See Bermudez*, 2008 WL 5235161, at *2 (citing *Enwonwu v. Trans Union, LLC*, 164 F. App'x 914 (11th Cir. 2006)).

After considering the relationship between sections 1681i(a) and 1681e(b), the Court concludes that, under some circumstances (which may be present here), a violation of section 1681a(i) logically entails a violation of section 1681e(b). That is, if a consumer notifies a CRA the information in his file is inaccurate, and the CRA either conducts no reinvestigation or conducts an unreasonably cursory reinvestigation in violation of § 1681i(a), then any subsequent report containing the same disputed information would, necessarily, not have been "prepare[d] . . . follow[ing] reasonable procedures to assure maximum possible accuracy."[4] § 1681e(b).

---

[4] The Court recognizes this conclusion is inconsistent with the decision in *Swoager*, where the court found "no rationale to justify the creation of an implied, and essentially redundant, statutory duty of 'maximum possible accuracy' on reinvestigation and dispute resolution procedures through § 1681e(b), when a parallel duty to delete inaccuracies already exists through § 1681i." 608 F. Supp. at 975. Effectively, the court in *Swoager* concluded section 1681e(b) applied when a CRA created a new item of information in a consumer's file and that item appeared on the initial report, but that section 1681e(b) did not set an accuracy standard for each subsequent consumer report.

There are two problems with this view. First, the plain language of section 1681e(b) applies the maximum possible accuracy standard to every consumer report issued by a CRA. *See* § 1681e(b) ("*Whenever* a consumer reporting agency prepares a consumer report . . .") (emphasis added). Because the definition of "consumer report" is defined in the statute and that definition is not limited to the initial report, section 1681e(b) also applies to consumer reports that contain inaccuracies that have or should have been reinvestigated. Second, the plain language of section 1681i applies the reinvestigation duty to "the completeness or accuracy of *any item of information contained in a consumer's file*." § 1681i(a)(1)(A) (emphasis added). That is, section 1681i(a) does not directly concern the accuracy of *reports* but instead creates an obligation for the CRA to maintain an accurate *file*. When the scope of each provision is considered — information in a consumer's file versus in a consumer report — the redundancy between the two provisions that concerned the court is *Swoager* is reduced.

The Court also observes that the court in *Swoager* hedged its position:

Assuming *arguendo* a contrary result on the § 1681e(b) issue as to reinvestigation procedures, the Court would reach this same result. As set forth above, the Court views the standard of conduct under § 1681i to be slightly lower than under § 1681e(b). It necessarily follows that the failure to correct inaccuracies upon reinvestigation also constitutes a failure

9

Case No. 10-23250-CIV-ALTONAGA/Simonton

In this case, Region's Bank closed one of Lazarre's accounts in June 2010 based on a report containing the disputed WaMu account item. (*See* 2d Am. Compl. ¶ 34). If the fact-finder concludes the reinvestigation procedures Early Warning followed in response to Lazarre's complaints were unreasonable under section 1681i(a), then the fact-finder may also conclude that the report issued by Early Warning to Region's Bank in June 2010 was not prepared following reasonable procedures to assure maximum accuracy as required by section 1681e(b). Accordingly, Lazarre has adequately pleaded a violation of section 1681e(b).

### IV.  CONCLUSION

Based on the foregoing, it is

**ORDERED AND ADJUDGED** as follows that Early Warning's Motion to Dismiss Counts I and II of the Second Amended Complaint **[ECF No. 69]** is **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 23rd day of June, 2011.

_____
**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

cc:  counsel of record

---

to follow reasonable procedures to assure maximum possible accuracy.

*Swoager*, 608 F. Supp. at 976 n.4.  Thus, *Swoager* acknowledges that if section 1681e(b) does apply to reports issued after an unreasonably cursory reinvestigation in violation of section 1681i(a), then a violation of section 1681e(b) "necessarily follows." *Id.*